No. 00-260

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 176

STATE OF MONTANA,

Plaintiff and Respondent,

v.

RONE LEE, JR.,

Defendant and Appellant.

APPEAL FROM: District Court of the Eighth Judicial District,

In and for the County of Cascade,

The Honorable Kenneth R. Neill, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Kelli S. Sather, Attorney at Law, Great Falls, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General; Jennifer Anders,

Assistant Attorney General, Helena, Montana

Brant S. Light, Cascade County Attorney, Great Falls, Montana

Submitted on Briefs: March 1, 2001
Decided: August 23, 2001

Filed:

_____

Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1 Rone Lee, Jr., appeals from the order revoking the suspended portion of his sentence issued by the Eighth Judicial District Court, Cascade County. We reverse and remand for proceedings consistent with this opinion.

¶2 Lee raises two issues in his appeal:

¶3 1. Whether the District Court erred when it determined that Lee violated a condition of his suspended sentence.

¶4 2. Whether the District Court's revocation of Lee's suspended sentence violated his right to due process.

## BACKGROUND

¶5 On January 20, 1995, Lee pled guilty to one count of sexual intercourse without consent and one count of attempted sexual intercourse without consent. These charges arose out of sexual relationships Lee had, or attempted to have, with two teenage boys. The District Court sentenced Lee to two forty-year prison terms, with thirty years suspended on each term, to run concurrently. The court declared Lee ineligible for parole during the first ten-year period of his sentence and ordered that Lee could be released on parole after the ten-year period only if he had successfully completed a sex offender treatment program. The court further ordered that "the county attorney shall immediately file a petition to revoke his probation and suspended portion of this sentence" if Lee had not successfully completed a sex offender treatment program prior to the time that he was to be released from prison.

¶6 Lee entered Montana State Prison on August 30, 1995. The Montana State Prison sex offender treatment program has two "Phases." Lee requested placement in Phase I of the

sex offender program in September 1995. After a three-year wait, Lee was enrolled in Phase I on July 23, 1998, and completed Phase I on January 13, 1999. The prison then placed Lee on a waiting list for entry into Phase II of the program. Lee was scheduled to begin Phase II in June 1999, but, because of a sit-down strike, he was unable to begin Phase II until July 1999. As of January 4, 2000, Lee's scheduled release date, Lee had not completed Phase II.

¶7 In anticipation of Lee's release, the State filed a petition to revoke Lee's suspended sentence. The State contended that completion of the prison's sex offender treatment program was a condition of Lee's probation. Lee filed a motion to dismiss the State's petition on the ground that his failure to complete sex offender treatment was not his fault and that "the prison guaranteed his failure by denying him access to treatment for an inordinate amount of time." The District Court found that Lee's failure to complete sex offender treatment prior to his discharge date was not due to any volitional conduct on his part. Nonetheless, the court determined that this failure constituted a violation of the conditions of Lee's suspended sentence and thus revoked his sentence. The court ordered Lee to serve the remaining thirty years on each count, to run concurrently, and declared Lee ineligible for parole until he completed Phases I and II of the prison sex offender program. Lee appeals.

## STANDARD OF REVIEW

¶8 We review a district court's decision to revoke a suspended sentence to determine whether the court abused its discretion. *State v. Lindeman* (1997), 285 Mont. 292, 302, 948 P.2d 221, 228. Where the issue is whether the court had authority to take a specific action, however, "the question is one of law over which our review is plenary." *State v. Nelson*, 1998 MT 227, ¶ 16, 291 Mont. 15, ¶ 16, 966 P.2d 133, ¶ 16.

## ISSUE ONE

¶9 Whether the District Court erred when it determined that Lee violated a condition of his suspended sentence.

¶10 Lee contends that the District Court was without authority to revoke his suspended sentence because he did not violate the terms of its suspension. He maintains that although his release on parole was conditioned on his completion of the prison's sex offender treatment program, completion of the program was not a condition of his release on

probation.

¶11 The State responds that we should decline to address the merits of this issue because it is a legal theory that was never presented to the District Court and has been raised for the first time on appeal. With regard to the merits of this claim, the State argues that the plain language of the sentencing order indicates that completion of the sex offender treatment program was a condition of both Lee's parole and his release on probation. The State observes that the sentencing order directed the county attorney to file a petition to revoke Lee's probation and suspended sentence if Lee had not completed the prison's treatment program prior to his release date.

¶12 The State's contention that Lee never raised the issue below is correct. Lee argued in his motion to dismiss and at a hearing on this motion that his suspended sentence should not be revoked because his failure to complete the sex offender treatment program before his discharge date was not his fault. Lee never argued that completion of the program was not a condition of his release. It is well-settled that issues and claims of error not properly preserved in the trial court are barred from appellate review. Section 46-20-701, MCA. Lee has not identified any exception to that rule that would apply here. Therefore, we decline to address the merits of this argument and affirm the District Court's conclusion that one of the conditions of Lee's suspended sentence was that he complete the prison's sex offender treatment program.

## ISSUE TWO

¶13 Whether the District Court's revocation of Lee's sentence violated his right to due process.

¶14 The District Court concluded that Lee's failure to complete the prison's sex offender treatment program prior to release constituted a violation of the terms of his suspended sentence sufficient to revoke his sentence, despite the fact that Lee's failure was "due to no volitional conduct" on his part. The court found that Lee's failure to complete the program frustrated the purposes of Lee's sentence, namely, the protection of the community and Lee's rehabilitation.

¶15 Lee contends that the District Court violated his right to due process by revoking his suspended sentence because, due to the prison's waiting periods and the length of the treatment program, it was impossible for him to complete the prison's sex offender

treatment program during his period of incarceration. He maintains that it is "fundamentally unjust to punish someone and restrict his liberty due to conditions beyond his control." Lee observes that he did everything in his power to diligently pursue completion of the program.

¶16 The State responds that, as with the previous issue, this argument was likewise never presented to the District Court, observing that "[n]owhere in his motion . . . did Lee mention 'due process' as the basis for his claim." With regard to the merits of this claim, the State observes that we have never considered how the Due Process Clause affects a court's ability to revoke a suspended sentence for a probationer's failure to comply with a condition of suspension that is not the probationer's fault. However, the State maintains that Lee's right to due process did not preclude the court from revoking his suspended sentence for failing to complete sex offender treatment while in prison.

¶17 The State's contention that we should decline to address this issue because Lee either did not raise it below, changed his legal theory on appeal, or failed to cite to any authority for his claim is erroneous. Lee argued both to the trial court below, and to this Court on appeal, that his suspended sentence could not be revoked on the basis of a failure to comply with a probationary condition when such failure was not due to his willful conduct. Furthermore, the District Court ruled on this precise claim, revoking Lee's suspended sentence while also noting that Lee's failure to comply was not due to his volitional conduct. We require nothing further. Accordingly, we will address the merits of Lee's claim.

¶18 The Due Process Clause of the Fourteenth Amendment to the United States Constitution imposes procedural and substantive limits on the revocation of the conditional liberty created by probation. *State v. Lange* (1987), 226 Mont. 9, 11-12, 733 P.2d 846, 848 (citing *Black v. Romano* (1985), 471 U.S. 606, 610, 105 S.Ct. 2254, 2257, 85 L.Ed.2d 636, and *Bearden v. Georgia* (1983), 461 U.S. 660, 666, 103 S.Ct. 2064, 2069, 76 L.Ed.2d 221). In *Bearden*, the United States Supreme Court considered the substantive limits imposed by the Due Process Clause on revocation where the probationer's failure to comply with a condition of probation was not willful. The precise question presented in *Bearden* was whether a sentencing court could revoke a defendant's probation for failure to pay an imposed fine and restitution absent evidence that the defendant was responsible for the failure or that alternative forms of punishment were inadequate. *Bearden*, 461 U.S. at 665, 103 S.Ct. at 2069. The Supreme Court concluded:

> [I]f the probationer has made all reasonable efforts to pay the fine or restitution, and yet cannot do so through no fault of his own, it is fundamentally unfair to revoke probation automatically without considering whether adequate methods of punishing the defendant are available.

*Bearden, 461 U.S. at 668-69, 103 S.Ct. at 2070-71. As a result, the Supreme Court determined that the revocation resulted in a denial of due process.*

¶19 However, the Supreme Court's decision in *Bearden* was clearly limited to "revocation proceedings for failure to pay a fine or restitution." *See Bearden*, 461 U.S. at 672, 103 S. Ct. at 2073. Importantly, the Supreme Court went on to observe: "We do not suggest that, in other contexts, the probationer's lack of fault in violating a term of probation would necessarily prevent a court from revoking probation." *Bearden*, 461 U.S. at 668, 103 S.Ct. at 2070 n.9.

¶20 We have previously discussed the element of willfulness with regard to the violation of probationary conditions that do not involve the failure to pay a fine or restitution. In *State v. Williams*, 1999 MT 240, 296 Mont. 258, 993 P.2d 1, we held that a court could revoke a suspended sentence even though the probationer's failure to comply with the terms of his suspended sentence was not willful. *Williams*, ¶ 17. Williams was convicted of sexual intercourse without consent and received a suspended sentence conditioned upon his acceptance into either of two state pre-release centers and completion of a sex offender treatment program. However, both pre-release center programs rejected Williams because of his lack of social skills, immaturity, and "acting out" behavior. The State moved to revoke Williams' probation because he could not comply with the conditions of suspension. The District Court found that Williams' failure to gain acceptance into the pre-release centers constituted a violation of Williams' suspended sentence and granted the State's petition. The court revoked Williams' suspended sentence and declared that he would be ineligible for parole until he completed the prison's sex offender treatment program. *Williams*, ¶ 10. We affirmed the court's revocation of Williams' suspended sentence because Williams' inability to secure treatment "frustrated the purpose of probation, namely, his rehabilitation." *Williams*, ¶ 17.

¶21 We do not believe our holding in *Williams* suffers from any constitutional infirmity. Accordingly, violations of non-financial probationary conditions need not necessarily be willful in order to justify revocation. The precise question posed by the instant case is whether the District Court could revoke Lee's suspended sentence for a non-willful violation of a condition of that sentence without considering the availability of other

adequate alternatives to incarceration. Significantly, in affirming revocation in *Williams*, we observed that the court had determined Williams was not a suitable candidate for any other programs that did not involve incarceration and, thus, it had no option but to incarcerate Williams in order for Williams to receive adequate sex offender treatment. *Williams*, ¶ 22. However, we did not indicate whether the court's finding regarding a lack of alternatives to incarceration was constitutionally required.

¶22 Decisions by appellate courts in other states have also affirmed probation revocations for the non-willful failure to complete sex offender treatment when adequate alternatives to incarceration did not exist. *See State ex rel. Nixon v. Campbell* (Mo. 1995), 906 S.W.2d 369, 372 (en banc); *People v. Colabello* (Colo. Ct. App. 1997), 948 P.2d 77, 80. However, as with our decision in *Williams*, these courts have not stated whether a finding that adequate alternatives to incarceration do not exist was a necessary condition to probation revocation. In *Nixon*, the probationer's failure to complete sex offender treatment was due to the fact that the treatment program was canceled. The Supreme Court of Missouri noted that the district court had found that the only acceptable alternative program was the Missouri Sexual Offender Program offered within Missouri's penitentiary system. The Court stated, "In the absence of an acceptable alternative outside the penitentiary system, we do not find that the revocation, on this ground was improper." *Nixon*, 906 S.W.2d at 372. *See also Colabello*, 948 P.2d at 80 (noting that the trial court had concluded that "alternatives to incarceration were no longer viable").

¶23 Under the present circumstances, we conclude that due process requires the trial court to consider whether there were adequate alternatives to incarceration that would further the purpose of Lee's suspended sentence. This is especially true when, as in *Nixon*, Lee's failure to complete sex offender treatment as required by the terms of his sentence was due not to his wilful conduct, but rather was due to the actions of the State. To do otherwise would deprive Lee of his conditional freedom simply because the State prevented him from completing sex offender treatment while imprisoned. Accordingly, we remand to the District Court to determine whether there are any reasonable alternative measures, other than continued incarceration, that are adequate to meet the State's interest in Lee's punishment, deterrence, or rehabilitation.

¶24 Reversed and remanded.

/S/ JIM REGNIER

We Concur:

/S/ KARLA M. GRAY

/S/ JAMES C. NELSON

/S/ W. WILLIAM LEAPHART

/S/ TERRY N. TRIEWEILER